IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TONI NETTLES JOHNSON**                                                              **PLAINTIFF**

v.                                         CIVIL ACTION NO. 1:25-CV-00114-HSO-BWR

**CITY OF MOSS POINT, MISSISSIPPI**                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is Defendant, City of Moss Point, Mississippi's, Motion to Enforce Settlement [16]. Plaintiff, Toni Nettles Johnson, responded [21] and Defendant replied [22]. Having conducted an evidentiary hearing and considered the parties' submissions, the record, and the relevant law, the undersigned recommends that the Motion to Enforce Settlement [16] be granted.

### I.  BACKGROUND

On April 14, 2025, Defendant removed this matter from the Circuit Court of Jackson County, Mississippi, based on federal question jurisdiction under 28 U.S.C. § 1331. Notice of Removal [1] at 1. This cause stems from the City of Moss Point's decision to deem Plaintiff's property "as a menace to public health, safety, and welfare" and the property's subsequent demolition. State Court R. [1-2] at 7, 9. In her Complaint filed in state court, Plaintiff claims Defendant violated her constitutional rights and deprived her of her civil rights under 42 U.S.C. § 1983. *Id.* at 9, 12-13.

On July 16, 2025, Plaintiff's counsel filed a motion to withdraw as Plaintiff's counsel indicating that Plaintiff consented to withdrawal and wished to obtain new counsel. Mot. [15]. The same day, Defendant filed its Motion to Enforce Settlement

1

[16], arguing that on June 23, 2025, the parties entered into "a full and final settlement of this matter." Mot. [16] at 1; Emails [16-1] at 2. Defendant requests that the Court enforce the settlement agreement. Mot. [16] at 2.

The June 18, 2025 through June 24, 2025 email correspondence between Plaintiff's counsel's office and Defendant's counsel filed in support of Defendant's Motion [16] is as follows:

> Defendant's counsel: ". . . in an effort to resolve this matter the city offers $2500 in full and final settlement."
>
> Plaintiff's counsel's office: "Is hearing that worth $5000 to get this case settled?"
>
> Defendant's counsel: "I passed along your counter and the response was that $2500 was all they were willing to pay. Will this work?"
>
> Plaintiff's counsel's office: "Offer accepted."
>
> Defendant's counsel: "Thanks. Just need W-9 and payment instructions. I'll notify Judge Rath and prepare a release and order of dismissal."
>
> Plaintiff's counsel's office: "Please see attached W-9. Please make the check payable to Toni Nettles Johnson and the Barton Law Firm, PLLC."

Emails [16-1].

On July 25, 2025, the Court granted Plaintiff's Motion to Withdraw as Counsel [15] and gave Plaintiff until August 25, 2025 to obtain new counsel or inform the Court that Plaintiff will be representing herself. Text Only Order, July 25, 2025. On August 22, 2025, Plaintiff informed the Court that she would be proceeding *pro se*. Resp. [19]. On August 25, 2025, the Court entered an Order [20] requiring Plaintiff to respond to Defendant's Motion to Enforce Settlement.

On September 8, 2025, Plaintiff responded and argued "[she] did not consent to a settlement in this matter." Resp. [21] at 1. Defendant replied that Plaintiff failed to show her former attorney lacked authority to settle this case. Reply [22] at 2.

On October 10, 2025, the Court entered an Order Setting Evidentiary Hearing [24]. The Court informed the parties that they "may present evidence and witnesses, if any, to support their positions at the evidentiary hearing." *Id.* at 3.

On November 4, 2025, the Court held an evidentiary hearing on the Motion to Enforce Settlement. Minute Entry, November 4, 2025. Ms. Johnson and counsel for Defendant were present. Plaintiff presented no evidence or witnesses other than her own testimony, while Defendant tendered an exhibit containing additional email communication between Defendant's counsel and Plaintiff's prior counsel's office regarding the settlement negotiation. Hearing Exhibit [26]. Plaintiff did not object to the evidence.

The additional email correspondence is as follows:

Defendant's counsel: "Attached is the draft release. [P]lease advise if acceptable."

Defendant's counsel: "We've received the settlement check. Is the release ok?"

Plaintiff's counsel's office: "Mr. Barton has approved the Release. Waiting on Ms. Johnson to come in and sign."

Hearing Exhibit [26].

## II. DISCUSSION

"A settlement agreement is a contract." *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992) (citation omitted). "[W]here the

3

substantive rights and liabilities of the parties derive from federal law," issues "regarding the enforceability or validity of such agreements are determined by federal law." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) (collecting cases). Plaintiff's claim was filed under 42 U.S.C. § 1983, therefore enforceability of the settlement agreement between the parties is determined by federal law. *Cavalier v. Jill L. Craft Att'y at L., L.L.C.,* No. 23-30778, 2024 WL 2846059, at *3 (5th Cir. June 5, 2024) (concluding "federal law determines the validity and enforceability of the settlement" in a § 1983 action).

A district court may enforce a settlement agreement pending before the court but "when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement." *Mid-S. Towing Co.*, 733 F.2d at 390 (citing *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)). Plaintiff contests the enforceability of the settlement and argues her attorney was not authorized to enter into a settlement agreement on her behalf. The Court held an evidentiary hearing on November 4, 2025 to determine the enforceability of the settlement agreement.

A. <u>Plaintiff's Prior Counsel Had Authority to Settle.</u>

> The law is settled that an attorney of record may not compromise, settle or consent to a final disposition of his client's case without express authority . . . . However, this general principle must be considered in connection with the rule that an *attorney of record is presumed to have authority* to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon *affirmative proof* of the party seeking to vacate the judgment that the attorney had no right to consent to its entry.

4

*Id.* (collecting cases and emphasis in original); *see Quesada v. Napolitano*, 701 F.3d 1080, 1083 (5th Cir. 2012); *see also Nelson v. Chet Morrison Diving, L.L.C.*, No. 05-1682, 2007 WL 442220, at *2 (E.D. La. Feb. 5, 2007).

"The mere fact that a party [disputing] a settlement informs its attorney, after an agreement has been reached, that he was not authorized to settle does not 'affirmatively prove' that the attorney had no authority, actual or apparent." *Allen v. United States Postal Serv.*, No. 20-304, 2021 WL 3679188, at *3 (E.D. La. July 21, 2021) (citation omitted); *see Lamar Co., LLC v. N.L.R.B.*, 127 F. App'x 144, 148 (5th Cir. 2005). Plaintiff bears the burden to prove her former attorney, Mr. Barton, lacked authority to settle on her behalf and that the settlement agreement is invalid. *Harmon v. Journal Pub. Co.*, 476 F. App'x 756, 758 (5th Cir. 2012).

At the evidentiary hearing, the Court deemed Plaintiff waived privileged communications related to the settlement agreement based on Plaintiff's opposition to the Motion to Enforce Settlement. Plaintiff was sworn in and first testified that after being informed of the settlement amount, she refused it, then later concluded Mr. Barton could not act on her behalf because she did not sign a contract with Mr. Barton for legal representation. Plaintiff also testified Mr. Barton did not tell her he was acting on her behalf. Plaintiff claimed she later discovered her former attorney had acted on her behalf and accepted a settlement without informing her of the amount until after the agreement had taken place. When asked to clarify what date Plaintiff's former attorney told her of the settlement offer amount, Plaintiff could not recall the date.

Despite not raising the issue in her Response [21] to the Motion [16], Plaintiff argued for the first time at the evidentiary hearing that Mr. Barton could not act on her behalf because she did not have a written contract for legal services. However, Plaintiff also admitted she sought out Mr. Barton's services as an attorney, he agreed to appear as her counsel, and it was Plaintiff's understanding that Mr. Barton was her attorney. As her attorney of record, Mr. Barton filed the Complaint [1-2] on Plaintiff's behalf and fully represented her in the proceedings until he withdrew as counsel. Mot. Remand [6]; Minute Entry, June 6, 2025; *see Link v. Wabash R.R.,* 370 U.S. 626, 633 (1962) ("[Plaintiff] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."). Additionally, Plaintiff's Complaint indicates she was proceeding "through her undersigned attorney of record" and requested "attorney's fees." Compl. [1-2] at 1, 13. Plaintiff stated during the evidentiary hearing that she was aware Mr. Barton had filed a lawsuit on her behalf and that the case had been removed to this Court. Plaintiff also recognized Mr. Barton would receive forty percent of the settlement amount. Although Plaintiff claimed she did not sign a representation agreement, Mr. Barton acted as Plaintiff's attorney of record.

"As plaintiff's attorney of record, [Mr. Barton] had at least apparent . . . authority to settle the case on [Plaintiff's] behalf." *Nelson*, 2007 WL 442220, at *2.

> Apparent authority to do an act is created as to a third person by *written or spoken words or any other conduct of the principal* which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

*Id.* (citation omitted and emphasis in original). During the evidentiary hearing, Defendant submitted emails demonstrating Mr. Barton's office negotiated a settlement on Plaintiff's behalf and that Defendant's counsel made a counteroffer to settle which Plaintiff's prior counsel's office accepted. Mot. [16-1]. Although Plaintiff's counsel's office staff signed certain emails, "[counsel] is responsible for the actions of his subordinates." *Collom v. Thomas*, No. 3:13-CV-262 DPJ-FKB, 2014 WL 671394, at *2 (S.D. Miss. Feb. 20, 2014); *see also Williams v. State Farm Mut. Auto. Ins. Co.*, No. 2:24-CV-86, 2024 WL 5275036, at *2 (S.D. Tex. Nov. 19, 2024). Mr. Barton was copied on all correspondence and there was no evidence produced at the hearing that Mr. Barton objected to, corrected, or opposed any of the emails.

Throughout the evidentiary hearing, Plaintiff did not dispute her former attorney's office communicated a settlement offer to Defendant, but rather that her former attorney was not authorized to act on her behalf. It is Plaintiff's burden to present affirmative proof to rebut the presumption that her attorney did not have authority to settle. *Allen*, 2021 WL 3679188, at *3 ("The party must present an affirmative basis to overcome the presumption that the attorney of record was authorized to enter into the agreement."). Plaintiff presented no argument, witnesses, or evidence other than her own testimony to support her statements. Plaintiff could not recall the date she was informed of the settlement. *See Quesada*, 701 F.3d at 1083. Mr. Barton was also not called as a witness by either party during the hearing.

Plaintiff has failed to meet her burden to demonstrate Mr. Barton was not authorized to settle her case or present affirmative proof to support her position.

7

While Plaintiff testified Mr. Barton acted on her behalf without informing Plaintiff of the settlement amount, Plaintiff could not recall facts related to her settlement communications with Mr. Barton.

"When a party informs his attorney after an agreement has been reached that he was not authorized to settle, this does not amount to affirmative proof that the attorney had no authority, actual or apparent, to settle." *Hardesty v. Waterworks Dist. No. 4 of Ward 4*, No. 13-CV-293, 2017 WL 5617825, at *3 (W.D. La. Oct. 16, 2017), *R. & R. adopted sub nom. Hardesty v. Waterworks Dist. No. 4 of Ward Four*, No. 2:13-CV-293, 2017 WL 5616029 (W.D. La. Nov. 20, 2017). Plaintiff's unclear and uncorroborated testimony alone cannot rebut the presumption that Mr. Barton was presumed to have authority to settle his client's case. *See Velarde v. Collins*, No. SA-23-CV-358-FB (HJB), 2025 WL 2726546, at *3 (W.D. Tex. Aug. 29, 2025), *R. & R. adopted,* No. SA-23-CV-00358-FB, 2025 WL 2726069 (W.D. Tex. Sept. 24, 2025); *contrast Stuart v. Russell,* No. 3:21-CV-01231, 2023 WL 5487365, at *3 (W.D. La. Aug. 8, 2023), *R. & R. adopted,* No. 3:21-CV-01231, 2023 WL 5486160 (W.D. La. Aug. 23, 2023) (finding plaintiff met her burden to show her attorney lacked authority to settle after she and her attorney both testified her attorney did not have authority).

Moreover, Defendant reasonably presumed Mr. Barton had apparent authority to settle this case on Plaintiff's behalf. *See Ginsberg 1985 Real Est. P'ship v. Cadle Co.*, 39 F.3d 528, 536 (5th Cir. 1994) ("the mere lack of actual authority does not factually or legally rebut the binding effect of *apparent* authority.") (emphasis in original). Mr. Barton represented Plaintiff in this lawsuit until he withdrew, and the

email correspondence indicates Mr. Barton reached an agreement for his client. Mr. Barton's office also requested the check payable to Plaintiff and replied that Mr. Barton's office was "waiting on Ms. Johnson to come in and sign." Hearing Exhibit [26].

Mr. Barton's and his office's conduct reasonably led Defendant to interpret that Plaintiff consented to settlement. Plaintiff presented insufficient evidence to contradict Mr. Barton's presumptive or apparent authority to settle.[1] *See Mid-S. Towing Co.*, 733 F.2d at 392; *see Nelson*, 2007 WL 442220, at * 3 ("Nelson has submitted no evidence to contradict his attorney's apparent (or actual) authority to settle the case for this amount or in any way otherwise to dispute the facts asserted in the motion."); *see Velarde*, 2025 WL 2726546, at *3.

B.  The Settlement Agreement is Enforceable.

> Federal law governing settlement agreements applies the general common law principles of contracts. To form a settlement agreement, there must be an offer, an acceptance, consideration, the inclusion of all material or essential terms, and a meeting of the minds among the parties. An offer and acceptance is judged by the parties' overt acts and words, not by the subjective or secret intent of the parties. For there to have been a meeting of the minds, the parties must have knowingly and voluntarily entered into the agreement. So long as these requirements have been met, federal law does not require settlement agreements to be reduced to writing.

*Cavalier*, 2024 WL 2846059, at *3 (internal quotations and citations omitted).

The emails indicate a valid settlement agreement was formed. Hearing Exhibit [26]. Defendant counter offered $2,500 in exchange for Plaintiff's release of the claims

---

[1] The Court's Order [24] Setting Evidentiary Hearing instructed the parties to "present evidence and witnesses, if any, to support their positions at the evidentiary hearing." Ord. [24] at 3.

9

against Defendant, Plaintiff accepted, and Plaintiff's counsel approved the Release. *See* Hearing Exhibit [26]; *Volland v. Principal Residential Mortg.*, No. 1:08-CV-696-LTS, 2009 WL 1293547, at *2 (S.D. Miss. May 7, 2009) ("For a settlement to exist, it is not necessary that a release be signed.") (citation omitted). No material terms were left outstanding, and a meeting of the minds between counsel took place. *See Berry v. Titan Solar Power LA, Inc.*, No. 24-743, 2025 WL 2946976, at *4 (E.D. La. July 29, 2025), *R. & R. adopted,* No. 24-743, 2025 WL 2528343 (E.D. La. Sept. 3, 2025) ( "[t]he emails and settlement document exchanged reflect that the parties made an offer, acceptance, consideration, the inclusion of all material or essential terms, and a meeting of the minds.").

A valid settlement agreement existed between the parties and Plaintiff is bound by the terms of the settlement. Thus, the Motion to Enforce Settlement Agreement should be granted and the settlement amount of $2,500 enforced.

### III. RECOMMENDATION

The undersigned United States Magistrate Judge recommends that Defendant's Motion to Enforce Settlement Agreement [16] be granted.

### IV. NOTICE OF RIGHT TO OBJECT/APPEAL

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U. CIV. R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings, or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 4th day of February 2026.

                                           s/ *Bradley W. Rath*
                                           BRADLEY W. RATH
                                           UNITED STATES MAGISTRATE JUDGE